## NAY v. MID-WEST PETROLEUM CORP.

1. EQUITY—CORPORATIONS—VISITORIAL JURISDICTION.
   Chancery court's visitorial jurisdiction over corporate officers and trustees to compel restoration of certain improperly alienated corporate property or respond in damages, conferred by statute, does not extend to suit by stockholders for alleged fraud in inducing exchange of stock for that of another corporation (3 Comp. Laws 1929, § 15328, subds. 2, 7, § 15330).

2. SAME—JURISDICTION—STOCKHOLDERS' BILL—MULTIFARIOUS.
   Bill by stockholders of one corporation praying relief against promoters of another corporation and others for inducing exchange of stock and seeking cancellation of agreement as between promoted corporation and third corporation, accounting and drilling of offset wells by latter and for other relief *held*, multifarious as not within either chancery's visitorial jurisdiction as conferred by statute or general equity jurisdiction (3 Comp. Laws 1929, § 15328, subds. 2, 7, § 15330).

3. CORPORATIONS—EQUITY—VISITORIAL JURISDICTION.
   Court, for sufficient cause, may remove directors, order an election, appoint a receiver or enjoin dissipation of corporate assets, but cannot, under bill by stockholders of one corporation, exercise visitorial powers over another independent corporation by way of assuming direction of its affairs or management (3 Comp. Laws 1929, § 15328, subds. 2, 7, § 15330).

4. APPEAL AND ERROR—MULTIFARIOUS BILL—AMENDMENT.
   On affirmance of order holding bill multifarious and granting leave to amend, plaintiffs are allowed to select consonant remedies in an amended bill.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 6, 1934. (Docket No. 24, Calendar No. 37,759.) Decided October 1, 1934.

Bill by Frank D. Nay and others against Mid-West Petroleum Corporation, a Michigan corporation, and others for cancellation of an agreement, an accounting and other relief. From order dismissing bill if not amended, plaintiffs appeal. Affirmed.

*A. S. Hinds,* for plaintiffs.

*Turner, Engle & Cochran,* for defendants.

WIEST, J. Plaintiffs held shares of stock in the Consolidated Oil Company. That company held leases on oil producing property and they filed the bill herein, alleging, as stated in plaintiffs' brief:

"That prior to the incorporation of The Mid-West Petroleum Corporation in 1929, they were stockholders in a corporation known as Consolidated Oil Company which was the owner of various valuable oil and gas leases in the Muskegon oil field and had drilled a producing well on lands covered by the Plunkett lease and was making money therefrom; that certain promoters of The Mid-West Petroleum Corporation, and especially the defendant, Willard G. Turner, acting for himself and other promoters, including the defendants, Beardsley, Wilson, Lovelace, Flanders and Thomas B. Bennett, now deceased, as inducements to plaintiffs to exchange their stock in the Consolidated for stock in Mid-West, and to permit the assignments of the Plunkett and Mary Bolt leases to the Mid-West, promised plaintiffs that said promoters would put $50,000 in cash into the Mid-West, that they had on hand and would put in sufficient drilling equipment, that new wells were to be drilled, including an additional well on the Plunkett lease; that plaintiffs believed these representations and relied thereon, and surrendered their stock in the Consolidated and ac-

cepted stock in the Mid-West and consented to the assignments of the Consolidated leases to the Mid-West.

"Plaintiffs charge further that the $50,000 in cash was not paid to the Mid-West as agreed, that no drilling equipment was turned over, that no new wells were drilled, and that the Mid-West did not even continue the operation of the Plunkett well but on the contrary entered into an agreement with Reed Oil Company by which it took over the management and control of the Plunkett well and all the oil and gas leases theretofore owned by the Mid-West, such agreement providing that the net profits should be divided between them.

"The bill further charges that the Reed Oil Company, either by fraud and collusion with the directors of the Mid-West, or because it is thus enabled to make a greater profit, has so neglected the operation of the Plunkett well that its production has dwindled from being a large producer to a condition where it produces a mere eight barrels per day or less. It is alleged that the Reed Oil Company has drilled two oil wells just to the east of the Plunkett property and is thus taking out of the ground oil in large quantities that should be produced by the Plunkett well and is thus robbing the Mid-West; that the owners of the Plunkett lease have accepted, in lieu of an offset well that should be drilled, a quarter share of the gas and oil as against the eighth share to which the lease entitled them; that other wells have been drilled in that vicinity, further demonstrating the value of the Plunkett lease and the dereliction of the Mid-West directors.

"The bill also alleges that the directors have been remiss in their duty in other respects.

"The following relief is prayed:

"1. That the promoters may be required to pay into the treasury of the Mid-West the sum of $50,000.

"2.   That if it be shown that Turner had no authority to make such promises he may be required to pay it in himself.

"3.   That the agreement between the Mid-West and the Reed Oil may be set aside and canceled.

"4.   That the Reed Oil may be required to drill offset wells.

"5.   That the Mid-West be required to perform its promises made to the stockholders of the Consolidated as inducements to become stockholders in the Mid-West.

"6.   That objectionable directors may be removed and replaced.

"7.   That the Reed Oil may come to an accounting with the Mid-West.

"8.   That if necessary a receiver be appointed to manage the Mid-West.

"9.   That if a dissolution of the Mid-West is decided on, the statutory receiver may be made a party to these proceedings.

"10.   That a temporary injunction be issued restraining the Mid-West, its officers and directors from dissipating the company's funds.

"11.   That general relief may be afforded."

On motion of defendants Willard G. Turner, Jr., Mid-West Petroleum Corporation, Myron Powell and Harry Brown the court held the bill multifarious and granted plaintiffs leave to amend. Plaintiffs stand by their bill and review by appeal.

The bill and measures of relief prayed disclose diversity of interests. The bill alleges acts by diverse defendants, wholly unrelated by interest, rights, liability or remedy.

Plaintiffs claim that their procedure is authorized by 3 Comp. Laws 1929, § 15328, relative to equity proceedings against corporations, and point to subdivisions two and seven of the section. The section

gives the equity court jurisdiction over directors, managers, trustees and other officers of corporations. Subdivision two thereof provides:

"To decree and compel payment by them to the corporation whom they represent, and to its creditors, of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such directors, managers, trustees or other officers."

Subdivision seven provides:

"To set aside all alienations of property made by the trustees or other officers of any corporation, contrary to the provisions of law, or for purposes foreign to the lawful business and objects of such corporations, in cases where the person receiving such alienation knew the purpose for which the same was made."

Such visitorial jurisdiction and power may be invoked by any stockholder. 3 Comp. Laws 1929, § 15330. These provisions do not authorize equity cognizance of the alleged representation inducing plaintiffs to exchange their stock in the Consolidated Oil Company for stock in the Mid-West Petroleum Corporation.

The statute deals with actions bearing on the relation of officers to a corporation. The cause of action, attempted to be stated between the Mid-West Corporation and the Reed Oil Company, seeking cancellation of the working agreement, an accounting and the drilling of offset wells, does not fall within that statute. Neither does the general power of the equity court reach to the extent here invoked.

The court, for sufficient cause, may remove directors and order an election; may appoint a re-

ceiver, and enjoin dissipation, of corporation assets, but cannot, under a bill by stockholders of one corporation, exercise visitorial power over another and wholly independent corporation by way of assuming direction of its affairs or management.

We think counsel for defendants have well separated the alleged causes of action, substantially as follows:

Action by stockholders of the Mid-West on its behalf against the Reed Oil; for cancellation of the working agreement; mandate that the Reed Oil drill offset wells and come to an accounting; action by stockholders on behalf of the Mid-West against the directors in that objectionable directors be removed, a receiver be appointed to manage and a receiver be appointed in case of dissolution and the directors be enjoined from dissipating assets; action by plaintiffs, each as individually damaged, against promoters of the Mid-West, in that the promoters be required to pay $50,000 into the treasury of the corporation or that, at least, defendant Turner be required to make such payment and, incidentally, that the Mid-West be required to perform the promise of its promoters.

The bill must be held multifarious, and it is left to counsel for plaintiffs to select consonant actions and remedies in an amended bill if he so desires within 20 days.

The order appealed from is affirmed, with costs against plaintiffs.

Nelson Sharpe, C. J., and Potter, North, Fead, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.